IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JESSE ROCHA, ID # 1170835, )<br>    Petitioner, )<br>vs. )<br> )<br>NATHANIEL QUARTERMAN, Director, )<br>Texas Department of Criminal )<br>Justice, Correctional Institutions Division, )<br>    Respondent. ) | No. 3:06-CV-0473-H (BH)<br>ECF<br>Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for murder in Cause No. F02-55871-S. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In October 2002, the State indicted petitioner for the murder of Jose Lopez (Lopez). CR[1] at 2 (indictment). At trial, the State presented testimony from petitioner's granddaughter, grandson, and daughter that petitioner shot Lopez. *See* Rep.'s R., Vol. IV at 26-27 [hereinafter cited as RR-

---

[1] "CR" refers to the Clerk's Record in Cause No. F02-55871-MS.

volume # at page]; RR-V at 22-24, 83-84. The testimony further showed that Lopez was married to petitioner's daughter at the time of the shooting, and that he was the father of petitioner's grandchildren. *See* RR-IV at 26; RR-V at 23, 84.

Each witness testified that they were inside, heard four or five gun shots, ran outside (granddaughter first, then daughter, followed by grandson), and saw petitioner with a gun and Lopez on the ground bleeding. *See* RR-IV at 26-28, 49-51; RR-V at 22-23, 48-49, 63, 83-86, 111. Each witness testified that Lopez had nothing in his hands when they came outside. RR-IV at 30; RR-V at 27, 86, 92, 112. The daughter and granddaughter both testified that they saw the last shot and heard petitioner state that "He made me mad." RR-IV at 27; RR-V at 83, 111, 113. The granddaughter also testified that petitioner did not indicate that Lopez had threatened him. RR-IV at 56. The daughter further testified that she gave two statements to the police – the first one incorrectly stated that she thought she "saw something in [her] husband's hand" when her father shot him. RR-V at 90-93, 117-20. She refused to sign the first statement because it was not true, and she not want her father "to get away with it." *Id.* at 91. She signed the second statement because it was true and correct. *Id.* at 92.

Petitioner did not testify at trial but pursued a theory that he acted in self defense when Lopez came at him with a hammer.[2] *See id.* at 122 (testimony of daughter); RR-VI at 125-27 (State's closing argument), 129-31 (defense's closing argument), 136, (same), 142 (same).

In May 2003, a jury convicted petitioner of murdering Lopez, *see id.* at 155, and assessed punishment at life imprisonment, RR-VII at 35-36. The trial court sentenced him consistent with

---

[2] During trial, the alleged weapon is referred to interchangeably as a hammer, an axe, or sheet rock hammer or axe.

2

such assessment. *Id.* at 36.

On March 17, 2004, the court of appeals affirmed the conviction and sentence. *See Rocha v. State*, No. 05-03-00808-CR, 2004 WL 516169, at *3 (Tex. App. – Dallas Mar. 17, 2004, pet. ref'd). On January 25, 2005, petitioner filed a state application for writ of habeas corpus. See S.H. Tr.[3] at 2. On May 25, 2005, the Court of Criminal Appeals denied that application without written order on findings of trial court without hearing. *Ex parte Rocha*, No. 61,941-01, slip op. at 1 (Tex. Crim. App. May 25, 2005).

On March 14, 2006, petitioner filed the instant petition for federal habeas relief. Respondent thereafter filed an answer and provided the state-court records. Petitioner filed a response to the answer.

## C. Substantive Issues

Petitioner raises two claims in this action. He first claims that his attorney rendered ineffective assistance of counsel by failing to investigate potential testimony from petitioner's son. Secondly, he claims to have new evidence to support his self defense theory – a recantation by his daughter.

## D. Exhaustion

Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to the first claim raised in the instant petition, but argues that petitioner has not exhausted the second claim. In the alternative, respondent argues that the second claim lacks merit. In his response to respondent's answer, petitioner argues that he amply presented his second claim to the

---

[3] "S.H. Tr." denotes the state habeas records attached to *Ex parte Rocha*, No. 61,941-01, slip op. (Tex. Crim. App. May 25, 2005).

3

Court of Criminal Appeals. Because the Court may deny a federal petition on the merits despite a failure to exhaust, *see* 28 U.S.C. § 2254(b)(2), the Court proceeds to the merits of the respective claims.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the AEDPA standards apply to petitioner's first claim because he raised the claim in his state application for writ of habeas corpus, and the Court of Criminal Appeals denied the claim for lack of merit. There has been no clear adjudication on the merits of petitioner's second claim. Consequently, the AEDPA standards do not appear to apply to it. *See Miller v. Johnson*, 200

4

F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits.").

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state

5

prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind to the extent applicable, the Court proceeds to address the merits of petitioner's claims.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first claim, petitioner alleges that his trial counsel rendered ineffective assistance of counsel when he failed to investigate potential testimony from petitioner's son, Gil Rocha. He provides an affidavit that was also presented in state court wherein the son avers that on the night of the murder, he saw the decedent attempt to strike his father with a hammer. Petitioner also provides an affidavit from his wife in which she avers that their son had attempted to contact defense counsel, and that she had told her son that counsel wanted to talk with him.

The Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial. U.S. CONST., art. VI. To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Petitioner in this case raised his claim of ineffective assistance of counsel in his State application for writ of habeas corpus. *See* S.H. Tr. at 7. Before considering the claim, the state trial court obtained an affidavit from petitioner's former attorney. *See id.* at 27. The attorney therein averred:

> The murder occurred at the home of the defendant, where the decedent also lived. All of the witnesses were related to both the defendant and the decedent. In numerous interviews with the defendant and his family members, no one ever indicated to me that the defendant's son, Gil Rocha, was present at the home on the day in question, nor did anyone ever tell me that he had witnessed anything occurring on that day. The witnesses who did testify during the trial included Gil Rocha's sister, mother, nephew, niece, and a man who was living in a trailer behind the defendant's house who knew Gil well. None of these witnesses testified that they saw Gil there that day.
>
> My notes, based on family interviews and interviews with the defendant, reflect

7

> that Gil Rocha had previously had problems with the decedent, but had also been the one who would take Luis, the decedent, around to drug houses in order for him to buy drugs.
>
> My notes also reflect that Gil Rocha "doesn't want to testify" in the trial.
>
> It is true that I never talked to Gil Rocha. I had asked the other family members to have him call me or come to my office to talk about what he knew, but he never did. I was never given any telephone number or address with which to locate him.

*Id.* at 31-32.

The trial court found counsel's affidavit credible. *See id.* at 28. With respect to the claimed ineffective assistance of counsel, the trial court found "it significant that none of the witnesses, all of whom knew Gil, ever indicated to counsel prior to trial that Gil was present and might have relevant information." *Id.* The trial court also noted that nothing presented at trial established Gil Rocha's presence when the murder occurred. *Id.* It found that counsel rendered effective assistance on petitioner's behalf. *Id.* The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Rocha*, No. 61,941-01, slip op. at 1 (Tex. Crim. App. May 25, 2005).

With respect to the alleged failure to investigate Gil Rocha as a witness, the attorney's affidavit adequately explains the efforts to contact the potential witness and provides an adequate basis for not further investigating. The trial court found the attorney credible. The credibility finding is presumed correct unless petitioner rebuts it with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not shown clear and convincing evidence which overcomes that presumption. From the affidavit deemed credible by the trial court, it is apparent that counsel made a reasonable decision that further investigation regarding Gil Rocha was not necessary. Petitioner has not overcome the strong presumption that counsel's conduct falls within the wide range of

8

reasonable assistance. Under the facts of this case, there appears to be no deficiency of counsel. The Court finds that counsel did not render deficient representation by not contacting, interviewing, or subpoenaing Rocha.

The state disposition of petitioner's claim of ineffective assistance of counsel appears consistent with *Strickland*. Petitioner has failed to show a deficiency of counsel. His complaint of deficient representation presents no basis for finding the jury verdict unreliable or the trial fundamentally unfair.

## IV. ACTUAL INNOCENCE

In his second claim, petitioner argues that he is has new evidence to support a self defense theory. He provides a June 18, 2005 affidavit from his daughter wherein she avers:

> My father shot my husband when my husband went toward him with a hammer in his hand. During trial I stated otherwise and my original statement to the police is correct. I made the statement at trial because of confused anger and at the behest of the prosecutor. I cannot remain silent and see my father in prison because of my statement made in anger.

The Court construes the instant claim as alleging that petitioner is actually innocent of murder based upon new evidence to support his claim that he killed his daughter's husband in self defense. With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter. *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam). In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). In the Fifth Cir-

9

cuit, actual innocence is not an independent basis for federal habeas relief. *E.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994). Petitioner thus cannot succeed on his actual innocence claim standing alone.

Petitioner, moreover, has not established that he is actually innocent. The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner has not met this standard. A jury found him guilty on the evidence presented against him. Although his daughter now recants her trial testimony and states that her original statement to the police is correct, the Court does not find that such recantation makes it more likely than not that no reasonable juror would have convicted him. For the recantation to have any potential impact on the outcome of petitioner's trial, the jury would have to find it credible. The recantation is contrary to the daughter's original explanation for not signing the initial statement drafted by the police. It is also contrary to testimony from the granddaughter and grandson that their father, the victim, had nothing in his hands. As the first person to go outside upon hearing the gunshots, the granddaughter would have been in the best position to see whether her father had anything in his hands. A reasonable juror could find the recantation not credible and believe the contrary testimony that the victim had nothing in his hands. Even with the proffered recantation, a reasonable juror could have convicted petitioner of murder.

In addition, even if the jury were to believe that the victim threatened petitioner with a

hammer, such belief does not alone satisfy the requirements for self-defense. The general rule regarding self-defense is that "a person is justified in using force against another person when and to the degree he reasonably believes the force is immediately necessary for protection against the other person's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (Vernon 2003). A person is justified in using deadly force (1) if his use of force would be justified under § 9.31; (2) if a reasonable person in his situation would not have retreated; and "(3) when and to the degree he reasonably believes the deadly force is immediately necessary . . . to protect himself against the other's use or attempted use of deadly force; or . . . to prevent the other's imminent commission of [certain listed offenses unrelated to the facts of this case]." *Id.* § 9.32(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42) (Vernon Supp. 2006). Under the facts of this case, *i.e.*, outside crime scene with room for retreat and multiple gunshots, a reasonable juror could conclude that petitioner was not justified in the use of deadly force, even if the victim had a hammer in his hand. Thus, even with the daughter's recantation, a reasonable juror could have found against petitioner on his self-defense theory.

Because a claim of actual innocence is not cognizable on federal habeas corpus, and petitioner has not shown himself to be actually innocent in any event, this claim entitles him to no federal habeas relief.

## V. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED** this 2nd day of October, 2007.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE